**PPG INDUSTRIES, INC., a Pennsylvania Corporation, Plaintiff,**

v.

**CANAL BARGE COMPANY, INC., Defendant and Third-Party Plaintiff,**

**and**

**Ashland Oil Company, a Kentucky Corporation, Third-Party Defendant.**

Civ. A. No. 72–932.

United States District Court,
W. D. Pennsylvania.

Oct. 17, 1977.

Joseph W. Conway, Conway & Stabile, Pittsburgh, Pa., for plaintiff.

Donald L. Very, Tucker, Arensberg & Ferguson, John A. Pillar, Theodore O. Struk, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for defendant and third-party plaintiff.

## MEMORANDUM OPINION AND ORDER

TEITELBAUM, District Judge.

Plaintiff entered into a contract with third-party defendant Ashland Oil Co. whereby Ashland agreed to transport a quantity of antifreeze liquid belonging to plaintiff from Beaumont, Texas to St. Paul, Minnesota. Pursuant to this agreement, the antifreeze was loaded into an Ashland barge and towed to Baton Rouge, Louisiana. Ashland entered into a second and separate contract with defendant Canal Barge and agreed to tow the Ashland barge containing the antifreeze from Baton Rouge to its final destination in St. Paul. Somewhere between Beaumont and St. Paul, the cargo of antifreeze liquid was contaminated by water. Plaintiff, therefore, brought this action against Canal to recover the damages it claimed to have sustained as a result of the contamination of its product. Plaintiff contended that defendant Canal was obligated to exercise due care in the operation of its towboat and in caring for the cargo being towed, and that Canal failed to exercise such due diligence in towing the Ashland barge.

Subsequent to the Court's charge to the jury and during the jury's deliberations, the jury posed the following question to the Court:

"If in our deliberations we consider that the damage to the barge took place during the topping at Lock 14 and that no negligence existed on the part of the captain and the pilot of the Caroline, must we at that point stop any further deliberations, or can we consider what is believed to be negligence on the parties involved following the topping?"[1]

In response, this Court instructed the jury that:

"The answer to your question is that you must stop if you find that the damage to the barge took place during that topping at Lock 14, and if you determine that that was due to a peril of the sea and not due to the failure to exercise—any negligence or due care on the part of Canal acting through its personnel, then you must stop any further deliberations, and that you cannot consider any negligence or failure to exercise due care, the burden of proof being on Canal that they did exercise due care and diligence during the rest of the trip following the topping. You cannot consider that at all.

"But I hope you understand that I am charging you, that if you decide that there was no fault in the topping, that Canal has met its burden of proof up to and including anything that occurred at

---

1. Tr. of Charge and Jury Question, pp. 31–32.

the topping, then that's where you stop."[2]

The reason for limiting the jury's review in such a manner was a concern with the ability of the jury to accurately allocate contamination damage between that which might have occurred during the topping and that which might have occurred thereafter. This Court felt that the evidentiary record was incapable of providing support for any split percentage distribution of damages.[3]

The jury returned a verdict in favor of Canal and against plaintiff as to the events up to and including the topping incident.

The Court did, however, also submit three special interrogatories to the jury, which were answered and returned with the verdict. These interrogatories, relating to damage which might have occurred subsequent to the topping, were returned as follows:

1. If you determine that Canal has satisfied its burden of showing due diligence up to and including the topping incident at Lock 14, what percentage of the damage to the cargo occurred as a result of the topping, if any, and what percentage occurred from a failure of due care from the time of the topping to the arrival of the REB–1602 in St. Paul?

 TOPPING 0%

 AFTER TOPPING 100%

2. Which of the parties, if any, failed to exercise due care from the time of the topping incident to the time of arrival in St. Paul?

 Defendant Canal

 (Plaintiff, Defendant, Third-Party Defendant)

3. What was the total amount of damage to the cargo?

 $110,000.00[4]

Largely based upon the interrogatory answers, plaintiff has now moved for judgment notwithstanding the verdict or, in the alternative, a new trial.

**DISCUSSION**

For the reasons hereinafter stated, this Court deems entry of judgment notwithstanding the verdict on behalf of plaintiff in the amount of $110,000.00 to be appropriate.

The purpose of submitting the special interrogatories to the jury was to provide a basis in the record for molding a verdict post trial, if necessary, as stated by this Court:

"As I see it, by use of this interrogatory, we can, if we are subsequently looking at the record, decide that if the topping was due to peril of the sea, which this interrogatory would tend to indicate they believe, but that there was a failure to prove use of due care during the remainder of the voyage on the part of Canal, then we will have a percentage figure and a damage; and we will have a statement by whom, and we can mold the verdict. . . ."[5]

The interrogatory answers indicate a jury finding that damage to the barge occurred in the topping and thereafter Canal failed to exercise due care in tending to the cargo. The interrogatories further indicate a jury finding that Canal's failure to exercise due care after the topping was the cause of the cargo's contamination. These explicit findings mandate that we now utilize the interrogatory answers in the manner contemplated to grant judgment notwithstanding the verdict.

The interrogatory responses are so clearly indicative of judgment in plaintiff's behalf that the only issue still extant is whether or not the jury's responses are supported by evidence of record. The above question must be answered with reference to the applicable burdens of proof in the case *sub judice.*

 This Court instructed the jury that the burden of persuasion rested with

---

**2.** Tr. of Charge and Jury Question, p. 53.

**3.** Tr. of Charge and Jury Question, pp. 32–33, 35.

**4.** *Exhibit B.*

**5.** Tr. of Charge and Jury Question, p. 40.

Canal both as to events up to and including the time of topping and after the topping.[6] In spite of resistance from counsel, this position on the burden of proof was steadfastly adhered to: "If they considered diligence and due care beyond the topping, I think the burden still remains with you [Canal]."[7] The burden of persuasion is imposed upon defendant Canal because as a carrier of goods it is essentially an insurer, absolutely liable to the shipper for damages unless occasioned by an excepted cause under the Harter Act.[8]

Defendant Canal argues that it was error to place the burden of proof regarding circumstances subsequent to the topping upon it. Canal contends that "once the shipowner has sustained its burden of proof that a *loss* was caused by negligent navigation, or peril of the sea, or any other excepted cause contained in the Harter Act or, where applicable the Carriage of Goods by Sea Act, the burden then shifts to the owner of the cargo to establish that, either the vessel was unseaworthy or that some other negligence which is not an excepted cause, was the sole cause or the concurring cause of the *loss*." (emphasis added)[9] Defendant Canal would then apparently urge upon this Court that since the general verdict finds that the events up to and including the topping were due to excepted causes and do not impose liability upon them, those events in some manner taint activity occurring subsequent to the topping so as to shift the burden of persuasion on those subse-

quent events to the plaintiff. Defendant's position conveniently overlooks the key factor which must be present in order to shift the burden of persuasion; that is a finding that the *loss* was a result of an excepted cause. In the case *sub judice,* the jury found only that damage to the barge was a result of an excepted cause. That defendant did not sustain its burden of proving that the *loss* was caused by an excepted cause is clearly displayed by the interrogatory answers. Defendant's brief therefore, assumes the very point which was in dispute. Thus, the burden of persuasion properly rested with defendant Canal as to the exercise of due diligence subsequent to the topping.[10] See *Clark v. Barnwell,* 53 U.S. (12 How.) 272, 13 L.Ed. 985 (1851); *Nichimen Company v. M. V. Farland,* 462 F.2d 319 (3d Cir. 1972). Since defendant Canal did not satisfy its burden of establishing that it exercised due diligence in caring for the cargo of antifreeze, as evidenced by the interrogatories, judgment notwithstanding the verdict in the amount of $110,000 must be entered on behalf of plaintiff in accordance with the findings of the jury.[11]

The last issue to be disposed of is whether or not an award of interest should be added to plaintiff's verdict. While allowance or disallowance of interest is a matter within the sound discretion of this Court, allowance of interest is the general rule in order to make whole the injured party. *Inter-State Steel Corporation v. S. S. "Crystal Gem,"* 317 F.Supp. 112 (S.D.N.

---

**6.** Tr. of Charge and Jury Question, pp. 54–55.

**7.** Tr. of Charge and Jury Question, p. 57.

**8.** 46 U.S.C. § 192.

**9.** Defendant's brief, p. 10.

**10.** Defendant's brief carefully highlights testimony which tends to prove that Canal did in fact exercise due care and diligence. This recitation is of no avail, however, for even if it be further assumed *arguendo* that plaintiff had offered no evidence upon which the jury could decide that there was a failure to exercise due diligence and due care beyond the topping, the interrogatory answers indicate that defendant's testimony was rejected by the jury. With the burden of persuasion resting on defendant Ca-

nal, the rejection of their evidence warrants a verdict for plaintiff in spite of any failure to affirmatively prove negligence.

**11.** Had the jury decided that a portion of the damages resulted from the topping and a portion thereafter, judgment notwithstanding the verdict might be inappropriate. *Moran Towing Corp. v. M. A. Gammino Construction Co.,* 244 F.Supp. 729 (1965) *vacated and remanded* 363 F.2d 108 (1st Cir. 1966), *on remand* 292 F.Supp. 134 (1968), *affirmed in part and remanded in part* 409 F.2d 917 (1969). However, any concern with an evidentiary basis for apportioning damages was removed when the jury found that all of the cargo damage occurred after the topping.

Y.1970) Accordingly, plaintiff is entitled to 6% interest computed from March 30, 1971, the date of the contamination of the cargo.